Katherine E. Conway We will now begin the hearing on behalf of the Defendant's Counsel, Ms. Erin Johnson, arguing on behalf of the Defendant. Ms. Johnson, you can proceed. Erin Johnson Good morning, Your Honors. Counsel, may it please the Court, my name is Erin Johnson with the Office of the State Appellate Defender, and I am here representing Mr. Ted Pax, the Defendant Appellant in this case. The issue in this case is the trial court erred in denying Mr. Pax's motion to sever the trial for the offense of aggravated battery to his mother from the trial for aggravated battery to a corrections officer. These offenses were not part of the same comprehensive transaction in order to make them subject to joinder, and the improper joinder of these two offenses denied Mr. Pax a fair trial because it allowed the jury to hear improper other crimes evidence. Each of these two offenses Do you think that even if these cases were severed, don't you think that they probably would prevent other crimes evidence anyway in each case? No, I don't. I don't believe that. Why not? There is no proper purpose for the other crimes evidence in this case. I know the state has argued there was a continuous state of rage that makes these linked, but that's really just a repackaging and relabeling of propensity evidence. Well, even if they weren't linked, even if they weren't linked, arguably say they weren't linked, and you have two separate cases, the other crimes evidence wouldn't come in in each separate case? No. Why not? Why would it not come in under? You're saying it wouldn't come in because they weren't linked. That doesn't matter with other crimes evidence. Why wouldn't they come in? Because there's no proper purpose for the other crimes, for either of these, as they relate to one another. The purposes for other crimes evidence such as M.O. or absence of mistake, all those things aren't present here. There was no proper purpose for the other crimes evidence. The only purpose was the improper purpose of propensity, to show that it's more likely that because Mr. Cox committed this one offense, he committed this other offense later. And that's clear from the record, because in arguing against the motion to sever in the trial court, the state below made the statement that the reason the motion to sever should be denied is because someone who spits on an officer is more likely just minutes before to have battered his mother. More likely is propensity. And that's what the state was using this for. And there wasn't any proper purpose. I know that the state has suggested that somehow the battery to his mother shows that there was an absence of mistake as to spitting on the officer, but they don't give a reason how that shows absence of mistake, and it doesn't show absence of mistake. These are two different methods of battery. They occur with different people at different times. So there's no proper purpose for this other crimes evidence. So because these trials were joined, this jury was able to hear this other crimes evidence that if these trials were separated, they otherwise would not have heard. And certainly... Really? That's my question. So if these were separated, you're saying they would never otherwise have heard these same or similar offenses? No. Because, again, my point is that in the case for the domestic barrier against his mother, there's no proper purpose to bring up this incident with the officer and vice versa. These... There's no... For the exceptions for when other crimes evidence can come in, it can't come in to show press, it can come in to show things like M.O. or absence of mistake or to defeat an alibi. That's not what we have here. Did the defendant claim that it was a mistake that he spit on the deputy? He claimed that... Yeah, he claimed that it was unintentional, that he had... Because in the evidence, the deputy had said he asked him to open his mouth. And he said that when he opened his mouth, spit landed on the deputy's face. So he testified that it was unintentional, which is pretty close, if not identical to an accident. And you're saying that the exceptions of accident and mistake don't apply. So therefore, addiction and severing. Well, it doesn't apply with regard to the battery of his mother. If there was evidence that the defendant had spit on a different person, or just hours before, or he had already had an offense in which he spat on someone and pled guilty to battery, then certainly that's a different consideration. But to say that because you may have pushed someone, that everything else you did that day has to be an absence of mistake, there's no connection. Because of the different methods of battery, there's no way to show it's an absence of mistake. So I don't think, despite the fact that the defendant had an offense that was this is a mistake, the pushing his mom doesn't show that he couldn't have also opened his mouth and accidentally spit on the officer. They're not the same methods. He was detained and seized at the house of his mother, was he not? That's correct. So as far as the timeline is concerned, there isn't a recess or a timeout between the first transactional battery and the second transactional battery. They are contiguous to the extent that when the defendant is removed from the area of the first battery, he is now in the custody of those people which he ultimately batters or spits upon. In other words, it's not like he beat his mother up in the morning and in the afternoon they found him and then took him to the jail and then he spit on him. Well certainly, I would disagree with that because there is, the battery, the alleged battery to his mother is complete. When the officers get there, nothing else is going on. So that crime has already been committed. It's done. Now the officers are going to take him into custody for that crime, but no other further action regarding that battery is still going on when the officers get there. And then the officer who is at the house, the officer who transports him, those are not the officers. Although they were witnesses, or one of them was a witness to the batteries, the corrections officer, those aren't the witnesses that are processing him into the jail. The officer who was spat on was a corrections officer. So there is an hour of time here. There's different locations. And I think the other thing, and this kind of piggybacks off the state's, I guess now argument that it's a continuous state of rage, is actually rebutted by the record. Because both the deputies who testified, the deputy who first came to the house, deputy Oberholzer, testified that when he got to the house, the defendant was upset, but he then sat with him on the couch. He was calm. They had a calm discussion. And likewise, the deputy who transported, deputy Rosecrans, testified that the defendant was angry, but he calmed down during the ride. And then he did get upset again when they got closer to the jail, but about something different. And that's really the issue here. These are not related. There's different places, different people, different issues that are arising in each of these. And even if the defendant may have been possibly angry during the commission of this battery, alleged battery to his mother, and may be angry when the spitting occurred, that doesn't connect them. Anger is not an element of aggravated battery. These are very clearly different people, different places, different circumstances. The only factor, when you look at the four factors of whether it's a comprehensive transaction, is there is approximately a time. They're about an hour apart. But otherwise, they're completely separated. So it's not a continuous transaction. There is a clear demarcation of when the first offense ends and when the second one occurs. So for that reason, they are not this comprehensive transaction. And I think that it's very clear that the improper admission of other crimes evidence is highly prejudicial. And in this case, this issue is fully preserved. And the burden is on the state to prove that this was harmless beyond reasonable doubt. And the state hasn't proven it. And moreover, they can't prove that. And the reason they can't prove that is because there was highly prejudicial evidence that was only relevant to one or the other offense that was introduced to the jury. There's videotape evidence of the defendant being transported to the jail, and then his interaction with some officers in the sally court, in the jail, and then actually they go all the way to where he's upstairs. None of that's relevant to this alleged battery to his mother. And likewise, there's a number of statements and testimony regarding the defendant's relationship with his mother, statements that were made between them earlier in the day that have no relevance to the battery to the corrections officer. Is it your position then that had these been severed, that the evidence was not overwhelming in each case independent of the other? Yes, I don't believe that evidence is overwhelming. So I understand that we have the correction officer and whoever was around him saying this is what happened. And the mother testifying regarding what happened to her was uncontradicted, correct? The defendant did contradict. I mean, the defendant testified he contradicted her version. But certainly with regards to the mother, there was photographs that didn't match up with how she said this battery occurred. And certainly that entire case was a credibility issue between the defendant's version and his mother's version. Versus, again, with the officer, we have the other deputies, and there's a video, although you can't see the spitting on the video. So I think what Justice Jorgensen is asking you is in separate and apart, you're saying each of those alleged offenses are going to be less prejudicial if they're heard separately than if they're heard together. Certainly, because I guess the evidence of each of these offenses, the videotapes, the pictures, if they were severed, they wouldn't come in one against the other. So certainly the jury wouldn't, in the corrections officer case, be seeing pictures of this defendant's mother, which they could have considered. And likewise, the jury wouldn't have been able to see this videotape of him having a tussle with these officers, because there is a lot of, even after, some video that doesn't relate to anything really, where he's being thrown into a cell. So I think that certainly that evidence is highly prejudicial. And it can't be said that there wasn't a reasonable probability that the jury entered a conviction on one or the other offense. Perhaps the case against the mother was stronger when it's alone than the case against the officer, or vice versa. But we don't know, because they were intertwined and then tainted, because the jury was able to hear both sides. And I would point out that the jury wasn't given any instruction about other crimes evidence and how it could consider it. So the jury had no guidance of how they could consider the spitting incident versus the battery incident. So it's even more of an issue here that there's a probability they considered it improperly, because there was no guidance for the jury in this case. Well, was the evidence coming in as other crimes evidence, or is it just because it was a continuance of the first offense? Well, there was, I guess the judge's position below was that it was a continuance. But I guess what I'm pointing out is that even if we want to say, okay, maybe it was a continuance transaction, but they would have come in at separate trials with other crimes evidence, there would have been an instruction. And I think that kind of goes to the Johnson case that I cited in my brief, where part of the issue was that the jury was improperly instructed they could consider this evidence for propensity. And here, obviously, the jury is uninstructed, but I think the suggestion certainly is that the jury did consider it for propensity, and I think that's what the state was intending. That's why they made the statement that it's more likely that if he did one, he did the other when they were opposing this motion to sever. Are you saying that you couldn't get an instruction like that? I'm not... Why there was no instruction certainly is because the posture of this case is different. I was just, I guess, offering that as another... There was no distinction for the jury as to how to use this, which, again, I think goes to the fact that there's a reasonable probability that the jury improperly used each of these offenses against the other. What I'm getting at is, based upon what you're arguing for us, if there wasn't an instruction or instructions regarding propensity and that it should be limited to accident and mistake, then it would seem to me that trial counsel might have been ineffective. You didn't raise that argument, did you? I didn't, but, again, that's because the procedural posture of this case was a bit different because the court had ruled pre-trial that this was a continuous transaction. So it wouldn't have made sense necessarily for defense counsel to offer that given the court's ruling. But I was just pointing out that when we're talking about, okay, well, what if there had been separate trials and these came in as other crimes? In that case, there would have been an instruction. And so I guess that was my point. Your point is that you're trying to talk about the harmless sale. Right. My point is that that goes to looking at the probability the jury considered this improperly. And I think that that just adds to the fact that the jury may have considered these to show that because he committed one crime, he may have committed this other crime. So, again, I would say that because this improper admission of this other crime's evidence is so prejudicial, Mr. Cox was denied a fair trial. And for that reason, we'd respectfully request that this court vacate his conviction and remand these for two separate trials. Thank you. Ms. Diaz. Good morning, Your Honors. Good morning. Counsel, may it please the Court, I'm Aileen Diaz on behalf of the people of the state of Illinois. The issue here today is as counsel framed it, whether the trial court abused its discretion in denying defendants' motion to sever the charges. But the second part of that issue or a subset is, even if the trial court improperly joined these charges, which we don't believe that it did, this severance issue is subject to a harmless error analysis. And the state here can prove beyond a reasonable doubt that had there been separate trials, the verdicts would have been the same. Well, if there has been separate trials, would the evidence of mom's battery come in on the son's case against the police officer and vice versa? According to, had it been this trial judge, he said it would have come in in the memorandum. He said, this is not coming in as other crimes or other acts. It's coming in as part of this intrinsic transaction. It's a comprehensive transaction. But even if it hadn't come in this way, I would have allowed it in a different way. If we're looking at it from here, I believe that it would have come in and not for propensity. Regardless of why... I would like to back up. Why would it have come in? Because it's a comprehensive transaction or what other basis? I'm sorry. Here, we believe that the trial court correctly ruled that this was a comprehensive transaction. Had these trials been separate, it would have come in... Not under propensity. Not under propensity. But under what? Right. So regardless of whether the ASA said... You said under what, and you said yes. Okay, so under... Under what? Under what? It would have come in as far as the mom. Defendant, before trial, he disclosed that he was going to rely on his defense of... Or the affirmative defense of self-defense. So his behavior within that hour, following the battery to the mother, would have come in to show intent and knowledge. In the second case, mom's event would come in in the second case? No. To show... The battery against the correctional institution officer would have come in to show that... Well, not just the battery. The transport to the jail and the battery against that officer would have come in to show that defendant knew that he was committing an insulting or provoking act against his mother. So no mistake. There was no mistake. There was intent. There was knowledge. So that would have... That the state could have used that to combat defendant's affirmative defense of self-defense. As far as the mother's battery coming in to the officer's trial, had they been separate, it would have been relevant to show absence of mistake. Defendant relied on his presumption of innocence, and he did say... He testified that he didn't spit on the officer. But given the short period of time and defendant's state of mind during that short period of time, this wouldn't have come in for propensity. It would have come in for the state to prove, beyond a reasonable doubt, that he committed these offenses. The state had the burden, and the state has to meet its burden. And here, where he's saying, I didn't do anything to my mother. I was trying to calm her down. And as far as the cop, oh, I didn't spit on the cop. Nothing happened. His state of mind... And while the trial court below used mens rea, that was an artful, we believe. But defendant's state of mind is relevant. It's not propensity. It's not to show that he has this bad general record of committing batteries. Well, could he say it was unintentional? To the defendant? Yes. At trial, yes. Well, isn't un a negative to the word intent? So therefore, it's relevant to the question of intent? Yes. And not mistake? Well, absence of mistake and intent, yes. I would say that it would have come in for both. And so what we have here is not an issue of propensity. We weren't... We don't have a bumbling fool here who just seems to fall into people and knock them on their keisters and then cause some injury and say, oops. Kind of like Gerald Ford. Defendant would like us to believe that that's what we have here. That is not what we have here. And that's why it's so important that the evidence came in in this joint trial. Again, that's not a consideration as to the severance. But it would have been important for the evidence to come in into separate trials. But the severance was also proper because while we believe that this court should not assign numerical value, as the court below didn't assign numerical value to the four factors that this court has instructed trial courts to consider in Walston. The four factors, the proximity and time and location. The location was different. But the time, it was a very short period of time. The identity of evidence linking the offenses. That's kind of hard to grasp. But basically, Walston explains it as sort of a continuing scheme. Is there anything to show that this is a continuing scheme? As Justice McLaren alluded to earlier, the battle against the mother didn't happen early in the morning, and then he had an encounter with an officer later in the evening. The identity of evidence here linking the offenses, we believe, is his behavior in the car. Well, first of all, his behavior as he's leaving the house, he kicks the door. And then his behavior in the car when he's talking to the officer, telling the officer that he believes that he shouldn't have even been arrested for this because obviously he thinks he didn't do anything wrong. And then telling the officers that he then, that they have unleashed the beast. So that links those two things. This was a continuing transaction. And the third factor, common method. Was this part of a larger criminal endeavor? Defendant argues that it wasn't because I believe that the crux of defendant's argument as to that factor was, well, defendant didn't set out to do this. If we look at Tate and McKell or Michael, I don't know how that's pronounced. Those cases, I mean, you don't need to, there's no requirement that a defendant set out to commit large, you know, to engage in a crime, a criminal spree. So here he was engaged in a larger criminal endeavor. He may not, I don't think he woke up and thought, you know what, I'm going to batter my mother and then I'm going to end up in prison and I'm going to spit on an officer. But that's what ended up happening. And it was part of a continuing transaction. And as far as the last factor, the similar evidence needed to establish the elements, all of the evidence here we submit would aid, it would be used to establish or to prove the elements that the state needed to prove. Through circumstantial evidence of the defendant's state of mind. It wouldn't directly prove knowledge. We agree with the defendant in the cases that, I believe it's Miller that defendant cites in the brief, that as far as mens rea, you can't transfer mens rea from one offense to another. No. But the defendant's state of mind is relevant to show circumstantial evidence of what happened that day and to rebut his affirmative defense, self-defense as to the battering against the mother and to rebut his assertion that his having spat on the cop was unintentional. Even if the trial court inartfully or improperly joined these charges, again, we submit that the evidence was so overwhelming in this case that the state... How was the evidence overwhelming in the battery regarding his mom? The nephew testified. The nephew seemed to be unbiased. He testified that he was at some point interacting with the defendant earlier that evening, and then he was interacting with his, I believe it's his grandmother, and he pulled the defendant off of the grandmother. So he testified. His testimony corroborated the mother's testimony. And then you have defendant's testimony. So, yes, it would be credibility determination, but we believe that the evidence as far as the mother and the corroboration by the nephew was overwhelming. And as far as the evidence against the officer, we have 3 occurrence witnesses who testified, and we have the videos. So for these reasons, we ask this court to find... You have no other questions? We ask this court to find that the trial court did not abuse its discretion and to affirm the judgment below. Thank you so much. Ms. Jones. Thank you. So with the state, I would submit, just argued again with the defendant's state of mind, is really, again, propensity. They're really trying to say, because this guy's an angry guy, all these things happen. And they're really conflating knowledge with intent. What the Miller case says is knowledge only has meaning with regard to the particular offense that you're charged with. Because otherwise, every crime where knowledge is the mental state could say, oh, well, the mental state joins these offenses. So you can join a retail theft with, you know, a battery that happens the next day. I mean, you can't really just say because it's knowingly that these are all joined. Do you understand the concept of hitting someone and causing pain versus spitting someone and causing insult? Certainly, those are different things. When you hit someone, it's usually, I think a reasonable person would think that when you hit someone that it's going to cause pain. When spittle lands from one's mouth on some other person, you don't necessarily assume that they were intentionally spitting on that person. So when you're talking about a battery that's of an insulting nature, there is much more leeway when it comes to, for instance, a battery on an elevator. If somebody bumps into or jostles somebody, is that a bump or is that a contact of an insulting nature? So you're almost comparing apples to oranges in the sense that in this case, we have, at least with the officer, a situation where he claims it was unintentional. He may have implied it was accidental. And if it were, then it would be much more difficult in my own opinion, based upon my experience as a prosecutor, to prove intent that you actually had the mens rea to insult somebody. And I would counter that with two things. So even if it is difficult, why should that mean that we get to bring in crimes that he would have committed earlier in the day to prove that, again, I think that's propensity. Oh, well, he pushed his mouth, so he must have meant to spit. Those are two different actions. It's not a case where we're saying he spit before and it was on purpose, so we can say this other... That's the proper absence of mistake, is if we had another crime where we know he admitted that he spat on someone and it was intentional, so now you can't say this was unintentional. But pushing his mom has nothing to do with that. And it's not, but I guess we're trying to say that because he said he relied on his presumption of innocence, the state can bring in other crimes to show that he's not innocent. That's propensity. The state may bring in other evidence to show that this person is a pathological insulter. And I would disagree that that's what this shows. I mean, these are two different circumstances, different people, different motivations, and I think also the state... The state factors that this is the essential evidence that we have to be able to violate this other crimes prohibition. But there was officers in the room who could testify as to the defendant's demeanor right before the spitting incident happened. And certainly that's more probative of what his state of mind when the spit happened than anything that happened to his mother an hour before at a different location when there's a different relationship, different circumstances. And I think that it's very clear that the deputies testified that there is a break, like we talked about. The state's trying to say, oh, this is a continuing state of mind, this state of rage that they refer to in the brief. The deputy at the house said he calmed down. We were talking calmly. He does get upset about being arrested. Then he's calm again in the squad car. Then he finds out some other information in the squad car that makes him upset. But it's a totally different reason for being upset. So certainly the deputy's there to testify as to once he gets to the jail why he's upset now and how he was acting. So I think that, first of all, the state doesn't need the evidence about the mom to prove his state of mind at the time, nor should they have it because it doesn't prove his state of mind at the time of the spitting incident. What would prove his state of mind is the circumstantial evidence of the officer saying, here's what was going on. And so to just say, because we want to prove this guy's angry, we can open the door to all these other crimes, I think really does violate this prohibition of other crimes and really comes down to propensity and saying this person is angry, so they must always be angry. And I think when we look at the factors that counsel went through, I'm not going to go through all the factors, but I certainly don't think this is a common scheme. When you look at cases like Kuro's, which this court analyzed in People v. Johnson, a common scheme is where the defendant shoots someone and then runs down the block and holds up someone with the same gun to steal their car because they need to get away from the person they just shot. That's what Kuro said. That's a common scheme. One crime, the crime of stealing the car, aids in the commission of the shooting because he's getting away. In this instance, it could not be said that this incident with spitting on the officer had anything to do with his mother. Neither one aided the other. And if we were to follow that, any time someone's arrested, anything they do in jail that night to the corrections officers could be brought in and say, oh, this is a common scheme because he got arrested and then later that night he did something to the officers, he hit them, he spit on them. Sorry. I would make one suggestion. You place the standard of review a page or two after the beginning of your argument and I would suggest that the standard of review should be the first paragraph or a separate heading immediately prior to your argument so that we will know when we start reading your argument what the standard of review is. Certainly. I'm not suggesting that your brief is defective but I'm suggesting that it makes it much easier for me I knew what the standard of review was anyway but it's nice to see it up front. Just like it's nice to see where if you're claiming plain error that you raise it early on and point out that there was no objection raised in the trial court so therefore it's plain error instead of waiting to the reply brief. I'm not saying you do it. I'm just saying that since I'm giving pointers out I'm suggesting that that's another pointer. We have a propensity to look at the same place for the same thing but you did a good job. Both of you ladies did a fine job today. Thank you so much for your argument. I hope you enjoyed this as much as we have. We will take some time to take the case out of consideration when we're decision in due course. Court's going to be in a brief recess. Have a great day.